IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA


RAMONA L. MCIVER, ROBIN L. HURT,    )
SHANNON K. WATSON, JEAN A. SMITH,   )
HARVEY J. SMITH, JR., GERALD J. LEE, II,  )
QUINTIN E. JOHNS, and               )
DARIUS A. BALTRHOP,             )
                            )
       Plaintiffs,             )
                            )
       v.                  )   Civil No. 13-576
                            )
IMANI CHRISTIAN ACADEMY,      )
                            )
       Defendant.          )

## O R D E R

AND NOW, this 24th day of September, 2015, upon consideration of Defendant's Motion for Summary Judgment (Doc. No. 30) and memorandum, statement of facts and appendix in support thereof (Doc. Nos. 31, 32 and 33), filed in the above-captioned matter on September 15, 2014, and upon further consideration of Plaintiffs' responses thereto (Doc. Nos. 34, 35 and 36), filed on October 17, 2014, and upon consideration of Defendant's reply (Doc. No. 37), filed on October 23, 2014,

IT IS HEREBY ORDERED that, for the reasons set forth herein, Defendant's Motion is DENIED.

## I. Background

In this action, Plaintiffs allege religious discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e, et. seq. This Court has jurisdiction over this case as it presents federal questions, and jurisdiction over such actions is vested pursuant to 28 U.S.C. § 1331.

Plaintiffs bring this action against Defendant Imani Christian Academy (hereinafter "ICA" or "the school"), alleging that they were terminated from employment with ICA in June, 2012, because of their expression of religious beliefs and their affiliation with a religious institution, Petra International Ministries (hereinafter "Petra"). ICA is a non-profit, private Christian education institution that was—until sometime in 2012—previously affiliated with Petra. Plaintiffs assert that, at all relevant times, they were members of Petra and employees of ICA, and that they were members of Petra when ICA terminated their employment. Plaintiffs further contend that there was a "clear and distinct divide during the course of [their] employment" with ICA, and that when the school made the decision to separate from Petra, Plaintiffs were terminated due to their connection with that organization. (Doc. No. 35, at 2). At some point after the separation from Petra, ICA became affiliated with Koinonia Church of Pittsburgh (hereinafter "Koinonia").

Plaintiffs allege that, as a direct and proximate result of ICA's violation of Title VII, they have suffered loss of wages and benefits of employment, attorneys' fees, costs and expenses of litigation, and mental anguish, humiliation and emotional distress. Accordingly, they seek back pay and front pay, equitable relief including reinstatement, attorneys' fees and costs of litigation, an award for non-economic damages, including compensation for anguish, humiliation and emotional distress, and all other relief to which they may be entitled under the statute.

On June 24, 2013, ICA filed a motion to dismiss Plaintiffs' Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), arguing lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted. ICA's motion was based on the contention that, as a religious educational institution, it is exempt from Title VII's prohibition on religious discrimination in employment. On February 21, 2014, the Honorable

Cathy Bissoon denied ICA's motion because the record was insufficient to allow for a determination of whether the school is a religious educational institution such that it is exempt under Title VII. The parties subsequently engaged in a period of initial limited discovery on the issue of the school's exempt status under Title VII, after which time ICA filed its motion for summary judgment.

## II. Legal Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The parties must support their position by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson, 477 U.S. at 247-48 (emphasis in original). A disputed fact is material if it might affect the outcome under the substantive law. See Boyle v. County of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998) (citing Anderson, 477 U.S. at 247-48). Summary judgment is unwarranted where there is a genuine dispute about a material fact, that is, one where a reasonable jury, based on the evidence presented, could return a verdict for the non-moving party with regard to that issue. See Anderson, 477 U.S. at 248.

When deciding a motion for summary judgment, the Court must draw all inferences in a light most favorable to the non-moving party without weighing the evidence or questioning the

witnesses' credibility.  See Boyle, 139 F.3d at 393.  The movant has the burden of demonstrating the absence of a genuine issue of material fact, while the non-movant must establish the existence of each element for which it bears the burden of proof at trial.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If the movant has pointed to sufficient evidence of record to demonstrate that no genuine issues of fact remain, the burden is on the non-movant to search the record and detail the material controverting the movant's position.  See Schulz v. Celotex Corp., 942 F.2d 204, 210 (3d Cir. 1991).  Rule 56 requires the non-moving party to go beyond the pleadings and show, through the evidence of record, that there is a genuine issue for trial.  See Celotex, 477 U.S. at 324.

### III. Discussion

ICA now moves for summary judgment, arguing that it is a religious educational institution and is therefore exempt from Title VII.  Title VII expressly provides that it shall be an unlawful employment practice for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  Title VII further states, however, that it "shall not apply to . . . a religious corporation, association, educational institution, or society with respect to the employment of individuals of a particular religion to perform work connected with the carrying on by such corporation, association, educational institution, or society of its activities."  42 U.S.C. § 2000e-1(a).

Additionally, 42 U.S.C. § 2000e-2(e) allows a religious educational institution to "hire and employ employees of a particular religion if such school . . . is, in whole or in substantial part, owned, supported, controlled, or managed by a particular religion or by a particular

religious corporation, association, or society, or if the curriculum of such school . . . is directed toward the propagation of a particular religion." It is the schools, however, that bear the burden of proving they are exempt from the statute's prohibition against discrimination on the basis of religion. See E.E.O.C. v. Kamehameha Schools, 990 F.2d 458 , 460 (9th Cir. 1993) (citing United States v. First City Nat'l Bank, 386 U.S. 361, 366 (1967)).

Although the statute does not define what constitutes a "religious organization," the Court of Appeals for the Third Circuit addressed the issue in LeBoon v. Lancaster Jewish Community Center Association, 503 F.3d 217 (3d Cir. 2007). LeBoon involved an employment discrimination suit by a former employee of the Lancaster Jewish Community Center ("LJCC"). In that case, the Third Circuit listed numerous factors to consider in determining whether an entity can be considered a religious organization under Title VII, including: "(1) whether the entity operates for a profit, (2) whether it produces a secular product, (3) whether the entity's articles of incorporation or other pertinent documents state a religious purpose, (4) whether it is owned, affiliated with or financially supported by a formally religious entity such as a church or synagogue, (5) whether a formally religious entity participates in the management, for instance by having representatives on the board of trustees, (6) whether the entity holds itself out to the public as secular or sectarian, (7) whether the entity regularly includes prayer or other forms of worship in its activities, (8) whether it includes religious instruction in its curriculum, to the extent it is an educational institution, and (9) whether its membership is made up by coreligionists." Id. at 226.

The Court of Appeals further explained that the determination of whether an entity is "'religious' for purposes of the exemption cannot be based on its conformity to some preconceived notion of what a religious organization should do, but must be measured with

reference to the particular religion identified by the organization." Id. at 226-27. The Court also

specified that "not all factors will be relevant in all cases, and the weight given each factor may

vary from case to case." Id. at 227. The Court of Appeals then proceeded through a fact-specific

analysis in LeBoon and ultimately determined that—during the relevant time period—the

characteristics of the LJCC clearly pointed to the conclusion that it was primarily a religious

organization.[1] See id. at 229.

In its summary judgment brief, although ICA discusses the various factors listed in

LeBoon and attempts to explain how the school meets the criteria set forth in that case, ICA fails

to focus on the characteristics of the school **during the time period that is relevant in this case**.

As noted above, throughout the LeBoon decision, the Court of Appeals repeatedly assessed the

factors in existence **during the relevant time period**, which was, as the Court specified in that

case, the period of the plaintiff's employment. See id. at 227. In the present case, the

employment actions at issue occurred in June, 2012, when Plaintiffs' employment with ICA was

terminated. Facts that have come to light in the course of the parties' period of initial discovery

indicate that—in addition to the employment terminations—ICA experienced various other

changes at about that same time. Therefore, an analysis of the factors indicating the nature of

ICA as it existed when Plaintiffs were terminated may differ significantly from an analysis of

those same factors in relation to ICA as changes were later made regarding the school. See, e.g.,

E.E.O.C. v. Kamehameha Schools, 990 F.2d at 462 (noting that, in that case, "the purpose and

---

[1]     The Court of Appeals initially specified that the time period under scrutiny in LeBoon
was the time of the plaintiff's employment (1998-2002). See 503 F.3d at 221, 227. Thereafter,
in conducting its analysis, the Court of Appeals repeatedly noted that it was examining the
LJCC's characteristics "during the period under scrutiny," "[d]uring the relevant period," or
[d]uring the relevant time." See id. at 226, 227, 228. The Court further noted that, in 2004 (after
the plaintiff's employment had ended), the LJCC merged with another organization. See id. at
221 n.1. The Court did not, however, consider the defendant organization's later status in
determining whether it was a religious organization during the earlier time period under scrutiny.

emphasis of the Schools have shifted over the years from providing religious instruction to equipping students with ethical principles that will enable them to make their own moral judgments").

Nevertheless, in arguing that it is exempt from Title VII as a religious educational institution, ICA focuses primarily on the nature of the school after Plaintiffs' employment was terminated—when it had clearly become affiliated with Koinonia—rather than on the characteristics of ICA at the time of Plaintiffs' terminations, which is the time period properly under scrutiny here. Plaintiffs, on the other hand, specifically argue that ICA should not be considered exempt from Title VII as a religious educational institution because, at the time their employment was terminated, ICA was not affiliated with either Petra or Koinonia. In fact, not only is it unclear which organization, if either, was affiliated with ICA at the time of the terminations, but it is difficult to evaluate other relevant characteristics of the school during the time period properly under consideration.

Although an assessment of certain factors listed in LeBoon indicates that ICA should be considered a religious educational institution at the time of the terminations (*e.g.,* the school did not operate for a profit), as to other factors, it is not apparent whether the documentation produced to support ICA's contentions existed at the time of the terminations (*e.g.,* the school's undated employee handbook, which includes a code of ethics, a mission statement and a list of employee objectives), and some other factors are only addressed as they existed after Plaintiffs' employment was terminated and ICA became affiliated with Koinonia. For example, ICA emphasizes that it is affiliated with Koinonia Church of Pittsburgh, that Koinonia participates in ICA's management, and that Koinonia is the "Governing Operating Bona Fide Church that governs and operates ICA." (Doc. No. 31, at 8-9, 12). However, the briefs and evidence of

record indicate that ICA was actually affiliated with Petra—and not Koinonia—until approximately the time that Plaintiffs' employment was terminated in June, 2012. (Doc. No. 37, at 2; Doc. No. 36-2, at 6-8). It further appears that ICA was not affiliated with Koinonia until some later point in time, although it is not evident precisely when this new affiliation began. (Doc. No. 36-2, at 7-8; Doc. No. 33-5). ICA also points out that it has members of Koinonia on its Board of Directors, along with a Spiritual Advisory Council that includes reverends and pastors from several churches and ministries. (Doc. No. 31, at 9). The school has failed to describe, however, the composition of the Board of Directors or the Spiritual Advisory Council in June, 2012, at the time of the employment actions at issue.

Moreover, to further support the argument that it is a religious organization, ICA asserts that the school "[r]egularly includes prayer and other forms of worship in its activities." (Doc. No. 31, at 8). However, when Dr. Waters, the school's former principal, was questioned in her deposition about the religious component in the students' schooling, defense counsel asked her to focus—not on the time period leading up to Plaintiffs' terminations—but rather, to describe the following 2012-2013 school year and the time during "the transition away from Petra and [when] the school moved on." (Doc. No. 36-2, at 10-12). Similarly, ICA asserts that the school "[i]ncludes religious instruction in its curriculum," but the curriculum documentation attached to its brief relates only to the 2013-14 school year, and Dr. Waters testified that the content of the curriculum was actually "strengthened" after the school separated from Petra. (Doc. No. 31, at 9, Doc. No. 33-11, Doc. No. 36-2, at 8). The Court is thus unable to evaluate several relevant factors with regard to ICA's nature and operations during the relevant time period.[2]

---

[2]      ICA argues, alternatively, that it is exempt under the language of § 2000e(2)(e). In support of this contention, however, Defendant offers the same evidence as presented supra, namely, that Koinonia "operates ICA" and that "[r]eview of the curriculum demonstrates that it is directed toward the propagation of Christianity." (Doc. No. 31, at 12). Here again, ICA's

Finally, ICA argues that "the minimal gap between the affiliations with Petra and Koinonia is immaterial." (Doc. No. 37, at 2). However, the very employment actions at issue in this case appear to have occurred during that time of transition, and the period surrounding that gap was evidently a time when certain changes that are relevant to the Court's inquiry occurred at the school. Therefore, because the issue currently before the Court is whether ICA was a religious educational institution at the time of the employments actions at issue in Plaintiffs' Complaint—not whether ICA is currently a religious educational institution, and not whether it was a religious educational institution after it switched church affiliations and made the various other changes mentioned, supra—ICA has failed to address the relevant factors as they existed during the time period under scrutiny. Therefore, the Court must find that the school has failed to meet its burden of demonstrating that it is exempt from Title VII as a religious educational institution.[3]

---

assertions concern its characteristics after Koinonia became "the governing bona fide religious entity that operates" the school, yet ICA does not address the nature of the school during the relevant time period, *i.e.,* at the time Plaintiffs' employment was terminated. (Doc. No. 31, at 12).

[3]      ICA asserts in its Reply that, because Plaintiffs did not respond to ICA's summary judgment motion in accordance with the Local Rules of Court for the Western District of Pennsylvania, the Court should deem ICA's Concise Statement of Material Facts admitted.
         The Court recognizes that Plaintiffs did not comply with Local Rule 56.C.1, despite being specifically instructed to comply with the form for briefing outlined in Judge Bissoon's Practices and Procedures—which clearly state that Local Rule 56 must be followed when responding to summary judgment motions. (Doc. No. 29). Specifically, Plaintiffs filed a "Motion in Opposition to Defendant's Motion for Summary Judgment," along with a brief and appendix in support thereof (which the Court has treated as a response in opposition to ICA's motion). Plaintiffs did not, however, file a proper Responsive Concise Statement in accordance with Local Rule 56.C.1.
         Nevertheless, even if the Court construes ICA's Concise Statement of Material Facts as true, the school has not established that ICA was a religious educational institution during the relevant time period.

**IV. Conclusion**

Based on the foregoing, Defendant's Motion for Summary Judgment is denied.


                                             s/Alan N. Bloch
                                             Alan N. Bloch
                                             United States District Judge

cc:      Counsel of Record